```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HEATHER HAGAN, et al.         :     CIVIL ACTION
                              :
        v.                    :
                              :
ROCHELLE BILAL, et al.        :     NO. 11-4343
```

                            MEMORANDUM

McLaughlin, J.                                      July 20, 2012

      This action arises from Heather Hagan's traffic violation and subsequent altercation with an off duty police officer. Heather Hagan and her daughter, Skylar Hagan, filed a complaint against the City of Philadelphia and police officer Rochelle Bilal under 42 U.S.C. § 1983, alleging violations of her rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments, as well as state intentional tort claims against Officer Bilal.

      The defendants move for summary judgment. The plaintiffs did not challenge the defendants' motion for summary judgment on the majority of the claims against Officer Bilal, or any claim against the City of Philadelphia. Therefore, the only remaining claims arise under § 1983 for violation of the Fourth Amendment and potentially under Pennsylvania state law for the tort of intentional infliction of emotional distress. The Court will grant the defendants' motion.

I.   Summary Judgment Motion

The facts presented here are undisputed unless otherwise noted.[1]  Disputed facts are read in the light most favorable to the plaintiff, the nonmoving party.  See Sheridan v. NGK Metals Corp., 609 F.3d 239, 250 n.12 (3d Cir. 2010).

On October 7, 2009, at approximately 12:30 P.M., Heather Hagan ("Mrs. Hagan") was driving north in the left lane of Broad Street with her daughter, Skylar Hagan ("Skylar").  See Defs.' Exhibit A, Internal Affairs Division Investigation File No. 09-0591: Citizen's Complaint of Heather A. Hagan and Statement of Heather Hagan, Internal Affairs Division Investigation No. 09-591 at 16 ("Defs.' Exhibit A").[2]

Mrs. Hagan was driving to St. Joseph's Preparatory School ("St. Joe's Prep"), to which she had never driven before, to pick up her stepson.  Her husband, Pennsylvania state trooper Keith Hagan, had given her directions and warned her that the neighborhood was "rough."  Because of this warning, Mrs. Hagan

---

[1]   In their motion, the defendants state that they "assume the material facts" provided by Mrs. Hagan's Citizen's Complaint and statement to Internal Affairs, and therefore do not dispute them. See Defs.'  Motion for Summary Judgment at 5 ("Defs.' MSJ").

[2]   The plaintiffs' material facts do not differ from those of the defendants.  The plaintiffs also rely on Mrs. Hagan's Citizen's Complaint and statement to Internal Affairs. See  Pls.' Opp. to Defs.' MSJ at 1-6 ("Pls.' Opp"); Pls.' Exhibit 2; Pls.' Exhibit 3.

did not want to deviate from her husband's directions.  See Defs.' Exhibit A at 16.

Mrs. Hagan saw a traffic sign prohibiting left turns as she prepared to turn left on Girard Avenue.  A woman, later identified as the defendant police officer Rochelle Bilal ("Officer Bilal"), pulled alongside the right side of Mrs. Hagan's car.  Officer Bilal yelled at or told Mrs. Hagan not to make a left turn.  Mrs. Hagan shook her head to acknowledge that she could not turn, but because of Officer Bilal's car, Mrs. Hagan could not continue straight on Broad Street.  See Defs.' Exhibit A at 12, 16.

Officer Bilal was dressed in civilian clothes and was not driving a police car.  Officer Bilal yelled at Mrs. Hagan to roll her window down "because she was a police officer."  Mrs. Hagan rolled her window down and asked for Officer Bilal's identification.  Officer Bilal responded that she was off duty, that she did not have to show Mrs. Hagan identification, and that she would give Mrs. Hagan a ticket if she completed the turn. Mrs. Hagan told Officer Bilal to give her a ticket, turned her hazard lights on and completed the left turn onto Girard Avenue to get out of traffic.  See Defs.' Exhibit A at 12, 16.

Officer Bilal also turned left and followed Mrs. Hagan to her destination, St. Joe's Prep's parking lot.  Mrs. Hagan pulled into a parking space, and Officer Bilal placed her car

behind Mrs. Hagan's and blocked her so she could not pull out. Officer Bilal then exited her vehicle and approached Mrs. Hagan's driver's side window.  Officer Bilal told Mrs. Hagan that she was not permitted to make the turn and that she was a police officer. At some point, Mrs. Hagan again asked Officer Bilal for identification, which Officer Bilal said she did not have to give.  See Defs.' Exhibit A at 12, 16-17.

As Officer Bilal approached the car, Mrs. Hagan was talking to her husband on her cell phone.  Mrs. Hagan told Officer Bilal that her husband is a State Trooper, and he spoke to Officer Bilal.  Mrs. Hagan's husband told her to call 9-1-1 because they did not know who the woman — that is, Officer Bilal — was.  See Defs.' Exhibit A at 17-18.

Mrs. Hagan then exited the car with her daughter, went inside the school and called 9-1-1.  Mrs. Hagan waited inside the school with her daughter for the police to arrive.  Officer Bilal remained parked behind Mrs. Hagan's car and blocked her from leaving until police arrived.  See Defs.' Exhibit A at 12, 17.

When the police sirens were audible, Officer Bilal drove her car from behind Mrs. Hagan's car, removing it from the parking lot and driving onto the street.  Two police officers on bicycles arrived, and Mrs. Hagan went outside and told them that she had called 9-1-1.  Two police cars arrived and then Sergeant John McDonald arrived.  The officers issued a verbal warning to

Mrs. Hagan.  See Defs.' Exhibit A at 12, 17, 34; See also Pls.' Exhibit 4, Statement of Officer Shannon Enz #7159, at 2; Pls.' Exhibit 5, Statement of Officer Elizabeth Strange #2688, at 3.

On October 9, 2009, Mrs. Hagan filed a Citizen's Complaint against Officer Bilal.  The Internal Affairs Division ("IAD") investigated the incident, and Chief Inspector Jerrold Bates of the IAD determined that Officer Bilal acted in an unprofessional manner by following and stopping Mrs. Hagan.  See Defs.' Exhibit A at 10, 12, 14-15, 41.

When the matter was heard before the Police Board of Inquiry ("PBI") to determine the resulting action, the PBI members unanimously found and recommended Officer Bilal not guilty of the charge.  The PBI recommendation was reviewed by two Deputy Police Commissioners, who also recommended a finding of not guilty.  The highest ranking PBI member notified Police Commissioner Charles H. Ramsey of the PBI recommended finding; Commissioner Ramsey reviewed the case and found generally that Officer Bilal was not guilty as to the charge of "Neglect of Duty, Failure to Comply with a Commissioner's Orders, Directives, Regulations, etc., or any oral or written orders of superiors."[3]  See Defs.' Exhibit B, Police Board of Inquiry File No. 10-0055 at

---

[3] The plaintiffs do not provide evidence to refute these facts, or commentary on them.

42, 43-44; Defs.' Exhibit C, Philadelphia Police Department Directive 79, "Disciplinary Procedure," at 128-133.

II. Analysis[4]

Mrs. Hagan and Skylar allege that Officer Bilal violated the their Fourth Amendment right to be free from unreasonable seizures, and that she intentionally inflicted emotional distress on them.  The plaintiffs initially alleged other constitutional and state law claims, but concede all but the aforementioned.  The plaintiffs also abandoned all claims against the City of Philadelphia.

---

[4] Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of informing the court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To meet this burden, the party may demonstrate that the party who bears the burden of proof lacks sufficient evidence to support his case. Id.  Once the moving party has filed a properly supported motion for summary judgment, the nonmoving party assumes the burden of setting forth specific facts that show a genuine issue of material fact for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

A fact is "material" if it might affect the outcome of the suit under the governing law. Id at 248.  If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, a dispute is genuine. Id.  The court must view the facts in the light most favorable to the nonmoving party. See Sheridan, 609 F.3d at 250 n.12.

    A.    <u>The Fourth Amendment</u>

    The plaintiffs contend that Officer Bilal violated their Fourth Amendment right to be free from unreasonable seizures, and that she is therefore liable to the plaintiffs under 42 U.S.C. § 1983. The defendants argue that because Officer Bilal never seized the plaintiffs, there was no Fourth Amendment violation. The Court concludes that even if Officer Bilal's actions constituted a seizure, the seizure was neither excessive nor unreasonable.

    A seizure occurs under the Fourth Amendment "when there is a governmental termination of freedom of movement through means intentionally applied." <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 381 (2007) (quoting <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596-97 (1989) (internal quotations omitted). A person is seized if, in light of all the surrounding circumstances, police conduct would communicate to a reasonable person that he was not free to ignore the police presence and continue with his business. <u>See</u> <u>Johnson v. Campbell</u>, 332 F.3d 199, 205 (3d Cir. 2003) (citing <u>Kaupp v. Texas</u>, 538 U.S. 626, 628 (2003)). A seizure has occurred only when the officer has restrained the liberty of a citizen in some manner through physical force or a show of authority. <u>See</u> <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16 (1968).

    To determine whether there has been a "show of authority," the Court must use an objective test of whether the

officer's words and actions would have conveyed to a reasonable person an order to restrict his movement.  See California v. Hodari D., 499 U.S. 621, 628 (1991).

The plaintiffs argue that the seizure began before Mrs. Hagan made the left turn when Officer Bilal prevented the plaintiffs from reentering the normal flow of traffic, but, if not then, when Officer Bilal pulled her car in back of the plaintiffs' car after the plaintiffs stopped in the parking lot of the school.  The Court concludes that there was no seizure when Officer Bilal first had contact with the plaintiffs.  Mrs. Hagan was able to terminate her interaction with the officer and drive away from Officer Bilal and make the illegal left hand turn.  It is a closer call as to whether there was a seizure when the officer pulled in back of the plaintiffs' car.  Although the officer did block the plaintiffs' car, they were able to get out of the car and go into the school.

Assuming Officer Bilal's actions constituted a seizure, the Court finds that the seizure was neither unreasonable nor excessive and therefore did not violate the Fourth Amendment. "What is constitutionally 'unreasonable' varies with the circumstances, and requires a balancing of the 'nature and extent of the governmental interests' that justify the seizure against the 'nature and quality of the intrusion on individual rights'

that the seizure imposes." <u>Johnson</u>, 332 at 205 (quoting <u>Terry</u>, 392 U.S. at 22, 24, 88).

To avoid constituting an unlawful seizure, an automobile stop must not be "unreasonable" under the circumstances. <u>See</u> <u>Whren v. U.S.</u>, 517 U.S. 806, 810 (1996). Generally, the decision to stop a car is reasonable where the police have probable cause to believe that a traffic violation has occurred. <u>See</u> <u>id</u>.

Officer Bilal's actions satisfy the reasonableness determination. Mrs. Hagan admits to having made an improper left hand turn. She committed an obvious traffic violation. Moreover, she was never detained after being stopped; she freely chose to exit the vehicle, and was not prevented from doing so by Officer Bilal.[5]

B. <u>Intentional Infliction of Emotional Distress</u>

In their opposition to the defendants' motion for summary judgment, the plaintiffs state that Officer Bilal intentionally caused them fear and emotional distress, and thereby committed the tort of intentional infliction of emotional distress. <u>See</u> The Restatement (Second) of Torts § 46. In

---

[5] Because the Court finds no constitutional violation, it need not consider whether Officer Bilal is entitled to qualified immunity in this case.

relevant part, the Restatement (Second) of Torts defines intentional infliction of emotional distress as follows:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
>> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
>>
>> (b) to any other person who is present at the time, if such distress results in bodily harm.

The defendants contend that this claim is not in the complaint and cannot be raised now because it is barred by the two year statute of limitations. The Court agrees that the claim is not in the complaint and that it is too late to raise it. In addition, on this record, no reasonable juror could find that the requirements for the tort of intentional infliction of emotional distress are met here.

In the initial complaint, the plaintiffs described the defendants' "intentionally . . . inflicting emotional distress" as an aspect of the injuries inflicted by the defendants with regards to other counts, but they do not mention it specifically with regards to the tort of intentional infliction of emotional

distress.  See Pls.' Complaint ¶¶ 50, 62 (Counts I and II: violations of civil rights); 74, 86 (Counts III and IV: tort of assault); 98, 109 (Counts V and VI: tort of false imprisonment).

The elements that must be satisfied to prove intentional infliction of emotional distress are that (1) the officer's conduct was extreme and outrageous, (2) her conduct caused the plaintiffs severe emotional distress, and (3) she acted intending to cause such distress or with knowledge that such distress was substantially certain to occur.  See Brown v. Muhlenberg Twp., 269 F.3d 205, 218 (3d Cir. 2001).

As to the first element, on this record, no reasonable juror could find that Officer Bilal's conduct was extreme or outrageous.  As to the second element, the Pennsylvania courts generally apply the "impact rule," which bars recovery for fear, shock or distress unless it is accompanied by a physical injury or impact upon the complaining party.  See Kazatsky v. King David Mem'l Park, Inc., 527 A.3d 988, 992 (Pa. 1993) (recognizing a limited exception for where the plaintiff was in personal danger of physical impact from the negligent force).  For recovery under tort law, an injury must be proven by expert medical evidence; recovery cannot be predicated on merely an inference of the defendant's "outrageousness" without expert medical confirmation that the plaintiff actually suffered distress.  See Bolden v. Se. Pennsylvania Transp. Auth., 21 F.3d 29, 35 (3d Cir. 1994) (citing

Williams v. Guzzardi, 875 F.3d 46, 51-52 (3d Cir. 1989) and Kazatsky, 527 A.3d at 995).

The plaintiffs have not introduced medical evidence that demonstrates that they suffered any injury or distress. Although the plaintiffs assert numerous times throughout their complaint that the defendants' actions or inaction caused or could have caused potentially severe physical and emotional reactions, they offer no proof from any expert, or other tangible evidence, that suggests these effects. Even for Mrs. Hagan's potential claim under Restatement § 46(2)(a), which allows an individual to recover for severe emotional distress caused to an immediate member of that individual's family, medical evidence would be necessary to show that Skylar suffered severe emotional distress.

An appropriate order follows separately.